1   KARIN G. PAGNANELLI (SBN 174763)
    kgp@msk.com
2   MARC E. MAYER (SBN 190969)
    mem@msk.com
3   ALEXA L. LEWIS (SBN 235867)
    all@msk.com
4   MITCHELL SILBERBERG & KNUPP LLP
    11377 West Olympic Boulevard
5   Los Angeles, California 90064-1683
    Telephone: (310) 312-2000
6   Facsimile: (310) 312-3100

7   Attorneys for Plaintiff
    ACTIVISION PUBLISHING, INC.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  ACTIVISION PUBLISHING, INC., a        CASE NO. **CV12-8964**-SVW
    Delaware Corporation,                          (JEM)
13
                 Plaintiff,              **COMPLAINT FOR:**
14
          v.                            **(1) INFRINGEMENT OF
15                                       FEDERALLY REGISTERED MARK
    ACTIVISION TV, INC, a Delaware        [15 U.S.C. § 1114];**
16  Corporation; AD MEDIA DISPLAYS,
    INC., a Wyoming Corporation; DAVID   **(2) FALSE DESIGNATION OF
17  GOTHARD, an individual,               ORIGIN [15 U.S.C. § 1125(a)];**

                 Defendants.            **(3) DILUTION [15 U.S.C. § 1125(c)];**
18
                                        **(4) UNFAIR COMPETITION
19                                       [Common Law and Cal. Bus. & Prof.
                                         Code § 17200];**
20
                                        **(5) CANCELLATION OF
21                                       TRADEMARK REGISTRATION [15
                                         U.S.C. §§ 1064 and 1119];**
22
                                        **(6) DECLARATORY RELIEF [28
23                                       U.S.C. § 2201]**

24                                      **DEMAND FOR JURY TRIAL**

25

26

27

28

Mitchell
Silberberg &
Knupp LLP

4840291.1/40113-00054

COPY

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
2012 OCT 17 PM 3:28
BY
FILED

Plaintiff Activision Publishing, Inc. ("Activision" or "Plaintiff"), for its Complaint against Defendants Activision TV, Inc., Ad Media Displays, Inc., and David Gothard ("Defendants"), states and alleges as follows:

## **NATURE OF THE ACTION**

1.     This is an action for trademark infringement, false designation of origin, dilution, and cancellation under the Lanham Trademark Act, for unfair competition under California law, and for declaratory relief.  At issue in this action is the blatant and willful appropriation of one of Activision's most valuable assets – the famous ACTIVISION name – by a start-up company in the business of providing interactive computer and television services (including video games) to members of the public.

2.     Activision is one of the world's leading makers of interactive entertainment products.  For more than 30 years, since 1979, Activision has developed, produced, marketed, distributed, and licensed hundreds of video and computer game products under the ACTIVISION mark.  Activision's products have been created for dozens of varieties of personal computer and home entertainment consoles, and include some of the most popular games ever released, such as the Guitar Hero® and Call of Duty® series of games.  Based on Activision's lengthy, continuous and uninterrupted use of the ACTIVISION mark, ACTIVISION has become synonymous with Activision and its high-quality entertainment products, and has become famous in the United States (and around the world).

3.     Defendants are an individual (David Gothard) and two affiliated companies owned or controlled by Gothard.  With full knowledge of Activision and its trademark rights in the ACTIVISION mark, Gothard and his companies have marketed, advertised, and purported to offer for sale or lease interactive

Mitchell
Silberberg &
Knupp LLP

COMPLAINT

4840291.1/40113-00054

1   computer-based television products – namely, products that allow members of the

2   public to receive digital transmissions of a variety of multimedia content, including

3   movies, television shows, and, of course, video and computer games – under the

4   names "ActivisionTV," "Activision.tv," "Activision Systems," "Activision

5   Solutions," and, on occasion, simply "Activision."

6        4.    Defendants' use of the Activision name for their products and services

7   is deliberate and intentional.  For example, Defendants and their representatives

8   have discussed at length ways to "capitalize" on their use of the Activision name

9   and the brand recognition that the name afforded to them.  They have used internet

10   keywords and metatags designed to attract customers seeking Activision's

11   products.  They have advertised the use of their system to play games such as

12   World of Warcraft® (a game produced and distributed by Activision's affiliate,

13   Blizzard Entertainment, Inc.).  Defendants even have suggested that the use of the

14   Activision name might assist in obtaining an exploiting a licensing deal with

15   Activision to offer its games via Defendants' system.  And, they now intend to

16   place the "ActivisionTV" name directly on television screens from which members

17   of the public may purchase entertainment products and services.  Defendants

18   apparently hope and intend that through their use of the ACTIVISION name and

19   mark consumers will mistakenly believe that the goods and services they are

20   purchasing from Defendants are in some manner associated with Activision and its

21   high-quality products.

22        5.    Through their conduct, Defendants have willfully created

23   circumstances whereby members of the public and members of the relevant trade

24   are likely to be led to incorrectly believe that Defendants and their goods and

25   services are authorized by, sponsored by, or affiliated with Activision, its well-

26   known marks, and the products provided thereunder.  This conduct must come to

27

1    an end, and Activision must be compensated for the injury to its trademark and

2    reputation from Defendants' actions.

3

4                              **JURISDICTION AND VENUE**

5        6.      This is an action arising in part under the Lanham Act, 15 U.S.C. §

6    1051, *et seq.* and under California statutory and common law.

7        7.      This Court has subject matter jurisdiction over this matter pursuant to

8    15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b) in that it involves an

9    action arising under the Lanham Act.  This Court has supplemental jurisdiction

10   over the state law claims pursuant to 28 U.S.C. § 1367.

11       8.      Defendants are subject to personal jurisdiction in the state of

12   California because the unlawful conduct complained of herein causes injury in this

13   judicial district, because Defendants have directed their activities at Activision and

14   its trademarks, and Defendants transact business and offer their products for sale in

15   this judicial district.

16       9.      Venue is proper in this judicial district pursuant to 28 U.S.C. §

17   1391(b) in that a substantial part of the events giving rise to this Complaint

18   occurred in this judicial district.

19

20                                      **PARTIES**

21       10.     Activision is a corporation organized and existing under the laws of

22   the State of Delaware, having its principal place of business in Santa Monica,

23   California.

24       11.     Activision is informed and believes, and on that basis avers, that

25   Defendant Activision TV, Inc. is a corporation organized and existing under the

26   laws of the State of Delaware, having its principal place of business in Naples,

27   Florida, with additional offices in Las Vegas, Nevada and Honolulu, Hawaii; that

Mitchell
Silberberg &  28
Knupp LLP
                                            4
                                        COMPLAINT

4840291.1/40113-00054

1   Defendant Ad Media Displays, Inc. is a corporation organized and existing under
2   the laws of the State of Wyoming, having its principal place of business in Naples,
3   Florida; and that Defendant David Gothard is an individual residing in Florida.

4       12.   Activision is informed and believes, and on that basis avers, that, at all
5   times mentioned in this Complaint, each Defendant was the agent, alter ego, or
6   representative of the other and, in doing the things averred in this Complaint, was
7   acting within the course and scope of such agency.

8

9   ## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION
10  ### Activision and its Famous ACTIVISION Mark

11      13.   Activision is one of the world's leading developers and publishers of
12  interactive entertainment products, including video and computer games and
13  related products. Activision finances, produces, creates, markets, distributes,
14  licenses, and otherwise exploits its massive catalogue of interactive entertainment
15  products. Activision is currently the largest video game publisher in the world.
16  Activision also is among the world's first commercial video game developers,
17  having been founded in 1979, just as video game consoles and personal computers
18  were becoming available to the mass market.

19      14.   Activision has developed, published and distributed hundreds of video
20  game products for dozens of video game systems. Activision's catalog includes
21  some of the best-known and most popular video games ever created. Activision's
22  catalog ranges from classic 1980's cartridge games such as "Pitfall," and
23  "Kaboom!," to contemporary blockbuster franchises such as the Guitar Hero® and
24  Call of Duty® series of games. Activision's Call of Duty® series of games is the
25  highest-grossing video game series in history, selling tens of millions of copies
26  worldwide. Activision distributes its game products through a variety of channels,
27  including on CDs or DVDs via "brick-and-mortar" and web retail stores, and by

1  digital download via online services such as Xbox Live, the PlayStation Network,
2  and Valve's Steam service.  Activision also licenses its games to video game rental
3  services such as Blockbuster and Gamefly, who charge a per-day or per-week fee
4  to customers for the use of Activision games.

5      15.    Activision's catalog of games includes games for virtually every
6  game-playing system ever developed.  This includes console systems such as the
7  Xbox, PlayStation, Nintendo, and Sega systems, portable handheld game systems
8  such as the Gameboy and Nintendo DS, and personal computers ranging from
9  early Atari and Apple 8-bit systems to current Windows PC systems.  Additionally,
10  for nearly 20 years, Activision's games have been playable online over the
11  Internet, using computer servers to connect players to each other for cooperative or
12  competitive online play.

13      16.    For more than 30 years, Activision has consistently, and without
14  interruption, used in commerce the word mark ACTIVISION and a related
15  ACTIVISION logo (collectively, the "ACTIVISION Marks") in connection with
16  its interactive entertainment and related products.  The ACTIVISION logo
17  (depicted below) is comprised of the word ACTIVISION, with the letters T and V
18  drawn in a larger font and connected to each other.  Thus, the ACTIVISION logo
19  in fact forms two words:  ACTIVISION and TV, a nod to the fact that Activision
20  games traditionally were played by consumers on their television sets.

21
22
23  # ACTIVISION ®
24

25      17.    The ACTIVISION Marks have been prominently displayed on
26  Activision video game products since 1980, including on the front and back covers
27  of the physical product, on the game's instruction manual, on a loading or "splash"

1    screen displayed when the game is launched, and in some instances within the

2    game itself.  The below examples illustrate the manner in which the ACTIVISION

3    Marks are used on the front box cover of popular video game titles.

  

14    18.    In addition to the foregoing, Activision licenses the ACTIVISION

15    Marks for use on a variety of merchandise, including clothing, hats, video game

16    consoles, computer hardware peripherals, posters, and books.  Activision also has

17    licensed the ACTIVISION Marks and Activision video game products for use in

18    arcade cabinets and kiosks.

19    19.    Activision has invested millions of dollars and enormous time, effort,

20    and resources developing and promoting its ACTIVISION Marks.  As a result,

21    ACTIVISION has become known throughout the United States and the world by

22    consumers, purchasers and members of the public as signifying interactive

23    entertainment and related products originating from Activision.  Activision has

24    acquired a valuable reputation and goodwill among the public as a result of such

25    association.  Indeed, the ACTIVISION Marks have become among the most

26    valuable and well-recognized marks in the world, and are famous in the United

27    States.

Mitchell
Silberberg &   28
Knupp LLP

COMPLAINT

4840291.1/40113-00054

1       20.    In addition to its common law trademarks in the ACTIVISION Marks,

2   Activision is the owner of no fewer than five U.S. registrations in the U.S. Patent

3   and Trademark Office ("PTO") for the ACTIVISION Marks, including

4   Registration Numbers 1,183,958; 1,207,377; 1,350,487; 2,903,474; and 3,398,311.

5   Among the goods and services included within Activision's registrations for the

6   ACTIVISION Marks are video game cartridges, computer programs and

7   instruction manuals, entertainment software production services, downloadable

8   computer game and entertainment software, game strategy guides, and clothing.

9   Certain of these registrations have been deemed incontestable pursuant to 15

10   U.S.C. § 1065.

11       21.    The ACTIVISION Marks are among Activision's most valuable

12   assets, and have developed an enormous amount of goodwill among consumers

13   and members of the public.  Activision regularly takes steps to protect its valuable

14   ACTIVISION Marks and enforce its rights against those who seek to trade off the

15   goodwill associated with these Marks.

16

17                  Defendants' Fraudulent "Activision" Registration

18       22.    Defendants ActivisionTV, Inc., Activision Systems, Inc., and Ad

19   Media Displays, Inc. are a group of affiliated companies that all are owned and

20   controlled by Defendant David Gothard.  Gothard is a Florida-based

21   "entrepreneur" who claims to have developed certain technology involving digital

22   video displays.

23       23.    In or about 1999, Gothard and his company Ad Media Displays, Inc.,

24   purported to register, on an "intent to use" basis, a U.S. trademark for the word

25   ACTIVISION in connection with "illuminated advertising and display signs"

26   (International Class 9) and "promoting the goods and services of others by creating

27   and displaying display signs" (International Class 35).  Gothard and Ad Media

1   Displays did so with full knowledge of Activision and its ACTIVISION Marks,
2   and with the intent of profiting from Activision's goodwill by attempting to secure
3   a trademark registration for a category of goods that had not yet been registered by
4   Activision.  For the next 6 years, Gothard and Ad Media Displays made no effort
5   to demonstrate to the PTO their purported "use" of the ACTIVISION mark.

6       24.    Activision is informed and believes, and on that basis avers, that
7   contrary to the representations of Gothard and Ad Media Displays to the U.S.
8   Patent and Trademark Office, Gothard and Ad Media Displays did not in fact have
9   a bona fide intent to use the Activision mark in connection with the categories of
10  goods and services for which they sought registration.  Rather, the 1999
11  registration was a ploy to improperly seize the ACTIVISION name for a variety of
12  future ventures for which the use of that name would give the company a
13  marketing advantage.

14      25.    In or about 2005, after receiving a Notice of Abandonment from the
15  United States Patent and Trademark Office, Gothard and Ad Media Displays
16  submitted a purported "Statement of Use," attesting under oath that they had used
17  the term ACTIVISION in Class 9.  Gothard and Ad Media Displays submitted as a
18  purported "specimen" with their Statement of Use a brochure depicting a television
19  set with the word "Activision Systems" at the bottom.

20      26.    Gothard and Ad Media Displays attested under oath that the
21  statements made in the Statement of Use were true and that the mark "is now in
22  use in commerce," under penalty of fine or imprisonment.  Nevertheless,
23  Activision is informed and believes, and on that basis avers, that in fact the
24  "Statement of Use" and the included specimen were false and fraudulent.
25  Specifically, no such television set ever existed or ever was sold to the public.
26  Moreover, Gothard and Ad Media Displays never used the word "Activision" in
27  connection with any purported "illuminated advertising and display signs" or

Mitchell
Silberberg & 28
Knupp LLP

9
COMPLAINT

4840291.1/40113-00054

1   "promoting the goods and services of others by creating and displaying display

2   signs." Additionally, Activision is informed and believes, and on that basis avers,

3   that Gothard and Ad Media Displays never submitted a corresponding "Statement

4   of Use" for any goods or services in Class 35.

5       27.    Activision is informed and believes, and on that basis avers, that

6   Gothard and Ad Media Displays knew that they had never used the ACTIVISION

7   mark in commerce in connection with any goods or services, including illuminated

8   advertising and display signs, and also knew that the brochures submitted as

9   specimens did not depict an actual product available on the market.  Activision is

10  informed and believes, and on that basis avers, that the representations made by

11  Gothard and Ad Media Displays in the Statement of Use were made falsely, with

12  the intent to deceive the Patent and Trademark Office and to obtain a registration

13  that they knew that were not entitled to.

14      28.    As a result of the false and misleading representations made by

15  Gothard and Ad Media Displays in their Statement of Use, and notwithstanding

16  Defendants' failure to show any actual use of the Activision mark in connection

17  with any goods or services or to file a Statement of Use in Class 35, on March 15,

18  2005, the U.S. Patent and Trademark Office registered a trademark in the mark

19  ACTIVISION in the name of Ad Media Displays, Inc. in Classes 9 and 35 (Reg.

20  No. 2,933,439, or the "Registration").

21

22  <u>Defendants' Infringing Use Of The "Activision" and "ActivisionTV" Marks</u>

23      29.    In or about 2006, shortly after obtaining the Registration, Gothard

24  incorporated in the State of Delaware a new corporation, ActivisionTV, Inc.

25  ("ATV").  Immediately thereafter, Gothard caused Ad Media Displays to assign all

26  of its intellectual property rights, including its ACTIVISION trademark

27  registration, to ATV.  Thereafter, Ad Media Displays became inactive and is no

1    longer registered to transact business in Florida.  At the time, Ad Media Displays

2    was not selling or distributing any products or services using the ACTIVISION

3    mark.

4        30.    In or about 2007, Gothard, now operating as ActivisionTV, began

5    formulating a plan for the development and distribution of an "interactive

6    television set" that would purportedly integrate a basic computer system (which

7    Gothard referred to as the "Works in a Box") and internet connection with a

8    television screen or monitor.  Using this system, Gothard and ATV intended to

9    provide "on demand" entertainment, computer applications, video games,

10   advertisements, and a variety of other content to consumers.  At the time, no such

11   technology had actually been developed or tested by ATV, but was merely a

12   concept for a future technology that it hoped to eventually bring to market.

13       31.    In or about 2008 and 2009, ATV began making presentations to a few

14   select businesses and investors using the name "Activision," "ActivisionTV," or

15   "Activision.tv," at times falsely representing that it possessed a registered

16   trademark for the term ACTIVISION for interactive television services.

17   Additionally, in or about 2009, ATV registered the domain name

18   www.activision.tv and launched a website.  In these presentations and on its

19   website, ATV touted a product (sometimes referred to as the "Activision System"

20   or "Activision Solution") that would be used as an all-in-one content delivery

21   system in hotels.  Specifically, ATV's proposed and advertised system would

22   allow hotel guests to receive a variety of in-room digital services, including "on

23   demand" transmission of movies, television programs, and video games, as well as

24   certain computer functions such as word processing.  ATV proposed that these

25   services would be charged to a guest's hotel bill and the corresponding revenue

26   would be shared between ATV and the hotel.  However, ATV's system was never

27   installed in any hotel or other establishment and Activision is informed and

1   believes, and on that basis avers, that the proposed system did not exist at that
2   time. It certainly did not exist in any usable or marketable form.

3       32.    In or about 2009, Activision became aware of the existence of ATV
4   and that ATV intended to provide computer and interactive television services,
5   including video game transmission services, using the "Activision" name. On
6   April 9, 2010, Activision sent ATV a letter demanding that ATV cease and desist
7   from any use of the Activision name or mark. ATV refused to do so.

8       33.    Notwithstanding that ATV had never sold or distributed an interactive
9   television product bearing the ACTIVISION mark, in 2009 ATV filed the first of
10  three (to become four after one of the applications was severed) trademark
11  applications (the "Applications") for the mark ACTIVISION.TV or a related
12  design mark incorporating the words "ACTIVISION.TV" (the "ATV Marks").
13  The Applications sought registration of the various ATV Marks for dozens of
14  goods and services, including computers, television sets, broadcasting equipment,
15  digital display screens, computer servers and components, and digital broadcasting,
16  and narrowcasting services. At the time the Applications were filed, ATV had
17  never sold, leased, or distributed any of the products identified in the Applications
18  using the ACTIVISION TV name. Nor had it ever provided any broadcasting or
19  narrowcasting services or transmissions under the ACTIVISION TV name (or any
20  other name).

21      34.    On June 30, 2010, July 28, 2010, September 22, 2010, and March 3,
22  2011, Activision filed Notices of Opposition to each of ATV's four trademark
23  Applications. The four Oppositions have been consolidated for trial purposes, and
24  have been ongoing before the Trademark Trial and Appeal Board ("TTAB"). The
25  testimony period currently is scheduled to begin on November 18, 2012.

26      35.    Recently, and subsequent to filing its Notices of Opposition,
27  Activision learned of continuing and, indeed, escalating infringement by ATV of

Mitchell
Silberberg &
Knupp LLP

28

12

COMPLAINT

4840291.1/40113-00054

1   the ACTIVISION Marks.  By way of example, Activision recently has learned that
2   in 2010 ATV, Gothard, and other representatives of Defendants have used the
3   ACTIVISION name at trade shows dedicated to home electronics and multimedia
4   entertainment, such as the Consumer Electronics Show in Las Vegas.  ATV has
5   sponsored sporting events, including an event where the ACTIVISION TV logo
6   was placed on a race car.  In 2010 and 2011 ATV, Gothard, and other
7   representatives of Defendants made presentations and proposals to more than a
8   dozen investor groups, hotel chains, satellite television providers, and retail stores
9   (including retail stores where Activision games are sold) using the ACTIVISION
10  TV and ACTIVISION Marks interchangeably.  Most recently, ATV filed a series
11  of patent lawsuits in which it refers to itself as "Activision."  Activision is
12  informed and believes, and on that basis avers, that in connection with these
13  activities ATV did not attempt to distinguish itself from Activision or dispel any
14  confusion and, to the contrary, fostered marketplace confusion.

15      36.    Additionally, in 2011, ATV began installing television sets and
16  computer systems in two hotels.  In each of these hotels, ATV has placed a sticker
17  bearing the "Activision TV" name on or in close proximity to the television set.
18  Additionally, ATV intends to soon begin offering in-room entertainment and
19  internet services to guests at these hotels.  These services will include the ability to
20  play online, browser-based, or social networking video games.  When it offers
21  these services, the word "Activision TV" will be displayed prominently on the
22  television display, including on screens where movies, television programs,
23  internet browser access, and other computer services can be ordered and paid for.
24  ATV also intends to eventually offer its products and services directly to
25  consumers, and to include in its products and services the ability to receive and
26  play video games, including games published by Activision and its affiliates.

27

Mitchell
Silberberg & 28
Knupp LLP

COMPLAINT

4840291.1/40113-00054

37.    ATV's "Activision TV" mark is visually and aurally similar (indeed, it is nearly identical) to Activision's ACTIVISION marks. In fact, Activision's ACTIVISION logo incorporates the word "TV." The parties' respective marks also are used for the same categories and classes of goods, are used in the same relevant market, and thus create the same commercial impression in the marketplace. Moreover, Activision and its products are generally associated in the minds of the public with television sets and displays, because video games typically are played on television sets.

38.    Activision has never authorized ATV to use any of its ACTIVISION Marks or any confusingly similar mark.

39.    ATV's unauthorized use of the confusingly similar words "Activision" "Activision Systems" and "Activision.tv" in connection with its products are likely to confuse, to cause mistake, or to deceive consumers. Members of the public and the relevant trade also are likely to believe that Activision is the source of, has endorsed or approved, or is somehow otherwise legitimately associated with ATV and its products.

40.    Activision is informed and believes, and on that basis avers, that in adopting and using the ACTIVISION TV mark, ATV intended to appropriate and trade off Activision's goodwill and the fame of its ACTIVISION marks. For example, in 2009, ATV's own public relations firm actively sought ways to "capitalize" on the similarity between the Activision TV name and the ACTIVISION Marks, including by embedding within the Activision TV website hidden "metatags" for the word "gaming" or by offering Activision's own games on its system. Indeed, ATV's own website advertises that the Activision TV in-room entertainment system allows users to play the highly popular game World of Warcraft® ,published by Activision's affiliate, Blizzard Entertainment, Inc.

Mitchell
Silberberg &
Knupp LLP

14
COMPLAINT

4840291.1/40113-00054

**FIRST CLAIM FOR RELIEF**

**FEDERAL TRADEMARK INFRINGEMENT**

**(15 U.S.C. § 1114)**

41.    Activision incorporates herein by reference the averments of paragraphs 1 through 40 as though fully set forth herein.

42.    Activision is the owner of all right, title, and interest in the ACTIVISION marks and has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

43.    With actual and constructive notice of Activision's federal trademark registrations and of Activision's extensive and continuous use of the ACTIVISION Marks, Defendants have used, and are continuing to use, the confusingly similar marks "Activision TV," "Activision.tv," "Activision," "Activision Systems," and "Activision Solution" (the "Infringing Marks") in the United States upon goods and services identical to, or similar to, the goods and services in connection with which Activision uses its ACTIVISION marks.

44.    Defendants' use of the Infringing Marks, including in connection with the promotion, sale, offering for sale, and distribution of interactive television and related products and services is likely to cause, and has in fact caused, confusion, deception, and mistake among consumers.  Buyers and persons who see Defendants' products bearing the Infringing Marks will think that they are Activision's products, or are licensed or approved by Activision.  This includes initial interest confusion, confusion at the time of sale, and post-sale confusion.  In actual fact, Activision does not approve Defendants' use of the Infringing Marks on any of its goods or services, and strongly objects thereto.

45.    Defendants know that use of the Infringing Marks is infringing, have reason to know that it is infringing, and/or have been recklessly indifferent to the fact that such use was and is infringing.

Mitchell
Silberberg &
Knupp LLP

15

COMPLAINT

4840291.1/40113-00054

1   46.   As a result of Defendants' conduct, Activision has suffered loss of

2   profits and other damage, and Defendants have earned illegal profits, in an amount

3   to be proven at trial.  Such damages and profits should be trebled in accordance

4   with 15 U.S.C. §1117.

5   47.   Defendants' acts have caused or are likely to cause, unless restrained

6   by this Court, Activision and the public to suffer great and irreparable damage and

7   injury through, *inter alia*, (a) a likelihood of confusion, mistake, and deception

8   among the relevant purchasing public and trade as to the source of the Infringing

9   Products; and (b) the loss of Activision's valuable goodwill and business

10  reputation symbolized by its ACTIVISION Marks.  Activision has no adequate

11  remedy at law.

12  48.   Defendants' continued and knowing use of Activision's marks

13  without its consent or authorization constitutes intentional infringement of

14  Activision's federally registered ACTIVISION Marks in violation of Section 32 of

15  the Lanham Act, 15 U.S.C. § 1114, and renders this an "exceptional case" under 15

16  U.S.C. § 1117(a).  Based on such conduct, Activision is entitled to injunctive relief

17  as well as monetary damages, and other remedies provided by Sections 1116,

18  1117, and 1118, including Defendants' profits, treble damages, reasonable

19  attorneys' fees, costs and prejudgment interest.

## SECOND CLAIM FOR RELIEF

## FALSE DESIGNATION OF ORIGIN

## (15 U.S.C. § 1125(a))

24  49.   Activision incorporates herein by reference the averments of

25  paragraphs 1 through 48 as though fully set forth herein.

26  50.   Activision, as the owner of all common law right, title, and interest in

27  and to the ACTIVISION Marks, has standing to maintain an action for false

1 | designation of origin and unfair competition under the Section 43(a) of the Lanham

2 | Act, 15 U.S.C. § 1125. Activision's ACTIVISION Marks are not only inherently

3 | distinctive and/or have acquired distinctiveness, but they are famous.

4 |     51.   Defendants have, without authorization, on or in connection with their

5 | goods and services, used in commerce marks that are confusingly similar to the

6 | ACTIVISION Marks, and/or has made false designations of origin which are likely

7 | to cause confusion or cause mistake or to deceive as to the affiliation, connection

8 | or association of Defendants with Activision, and/or as to the origin, sponsorship

9 | or approval of Defendants' goods or services or commercial activities.

10 |     52.   Activision is informed and believes, and on that basis avers, that the

11 | conduct of Defendants has been knowing, deliberate, willful, intended to cause

12 | confusion, or to cause mistake or to deceive and in blatant disregard of

13 | Activision's rights.

14 |     53.   Defendants knew or by the exercise of reasonable care should have

15 | known that the adoption and commencement of use in commerce and continuing

16 | use of marks that are confusingly similar to Activision's ACTIVISION Marks

17 | would cause confusion, mistake, or deception among purchasers, users and the

18 | public.

19 |     54.   Defendants' wrongful conduct has permitted or will permit it to make

20 | substantial sales and profits on the strength of Activision's marketing, advertising,

21 | sales and consumer recognition. As a direct and proximate result of Defendants'

22 | wrongful conduct, as alleged herein, Activision has been deprived and will be

23 | deprived of the value of its ACTIVISION Marks as a commercial asset in an

24 | amount as yet unknown but to be determined at trial. Activision seeks an

25 | accounting of Defendants' profits, and requests that the Court grant Activision

26 | three times that amount.

27 |     55.   Defendants' acts and omissions have caused and, unless restrained by

Mitchell
Silberberg &
Knupp LLP

28 |

17

COMPLAINT

1   this Court, will continue to cause Activision and the public to suffer great and

2   irreparable damage and injury through, *inter alia*, (a) a likelihood of confusion,

3   mistake and deception among the relevant purchasing public and trade as to the

4   source of the Defendants' Infringing Products; and (b) the loss of Activision's

5   valuable goodwill and business reputation symbolized by its ACTIVISION Marks.

6   Activision has no adequate remedy at law.

7       56.   Based on Defendants' wrongful conduct, Activision is entitled to

8   injunctive relief as well as monetary damages and other remedies as provided by

9   the Lanham Act, including Defendants' profits, treble damages, reasonable

10   attorneys' fees, costs and prejudgment interest.

11       57.   Upon information and belief, Defendant has deliberately and willfully

12   used the ACTIVISION Marks in an attempt to capture initial consumer attention

13   and to trade upon the enormous goodwill, reputation and selling power developed

14   by Plaintiff in connection with the Goods ACTIVISION Marks, as well as in order

15   to confuse consumers as to the origin and sponsorship of Defendant's goods.

16   Upon information and belief, the intentional nature of the aforementioned acts

17   renders this an exceptional case under 15 U.S.C. § 1117(a), and Plaintiff is further

18   entitled to its attorney's fees and costs of suit herein pursuant to 15 U.S.C. § 1117.

19

20               **THIRD CLAIM FOR RELIEF**

21               **TRADEMARK DILUTION**

22             **(15 U.S.C. § 1125(c))**

23       58.   Activision incorporates herein by reference the averments of

24   paragraphs 1 through 57 as though fully set forth herein.

25       59.   Plaintiff's ACTIVISION Marks are famous.  The ACTIVISION

26   Marks are strong and unique, have been used in connection with the products

27   offered by Activision for an extended period of time, have been the subject of

1  substantial advertising and promotion, have been used and advertised throughout

2  the United States, and are widely recognized by consumers and those in the trade.

3  The acts of Defendants in using the ACTIVISION Marks in advertising and

4  elsewhere were commenced and committed from a time after Plaintiff's

5  ACTIVISION Marks became famous.

6      60.    Defendants' acts of using the ACTIVISION Marks in Defendants'

7  advertising, marketing, and elsewhere are in violation of 15 U.S.C. § 1125(c) in

8  that they have caused dilution of the distinctive quality of Activision's famous

9  ACTIVISION Marks, all to the irreparable injury and damage to Activision.

10     61.    Defendants' acts have harmed Activision and lessened its ability

11  uniquely to identify and distinguish its products and services by using the

12  ACTIVISION Marks.  Defendants' acts have blurred the unique association that

13  has existed between Activision's ACTIVISION Marks and the goods made or

14  authorized by Activision.

15

16                        **FOURTH CLAIM FOR RELIEF**

17                           **UNFAIR COMPETITION**

18           **(Cal Bus. & Prof. Codes 17200, 17208, and 17500, *et seq.*)**

19     62.    Activision incorporates herein by reference the averments of

20  paragraphs 1 through 61as though fully set forth herein.

21     63.    Defendants have, by reason of the foregoing acts, engaged in unfair

22  and fraudulent business practices.

23     64.    Defendants' acts have impaired or will impair Activision's business

24  and have otherwise adversely affected Activision's business and reputation by use

25  of unfair and fraudulent business practices in violation of the California Business

26  & Professions Code, including Sections 17200 to 17208, 17500, *et seq.*, and the

27  common law.

Mitchell
Silberberg &  28
Knupp LLP

4840291.1/40113-00054

1 65. Activision is informed and believes, and on that basis avers, that

2 Defendants' acts have caused and, unless restrained by this Court, will continue to

3 cause Activision to suffer great and irreparable damage and injury. Activision has

4 no adequate remedy at law.

5 66. Upon information and belief, Activision avers it will suffer loss of

6 profits and other damage as a result, in an amount to be proven at trial. On the

7 statutory unfair competition claim, Activision seeks only disgorgement of profits

8 and does not seek damages at law.

9

10 **FIFTH CLAIM FOR RELIEF**

11 **CANCELLATION OF U.S. TRADEMARK 2,933,439**

12 **(15 U.S.C. §§ 1064 and 1119)**

13 67. Activision incorporates herein by reference the averments of

14 paragraphs 1 through 66 as though fully set forth herein.

15 68. On information and belief, when Gothard and his company Ad Media

16 Displays, Inc. filed the application that matured into Registration No. 2,933,439, it

17 knew its statements and declarations to the USPTO in connection therewith were

18 false. Defendants had the intent to mislead the USPTO and thereby to commit

19 fraud as they were aware that they did not in fact have a bona fide intent to use the

20 ACTIVISION mark in connection with the categories of goods and services for

21 which they sought registration, and, moreover, they never did use the mark in

22 connection with these categories of goods and services. Instead, Defendants

23 submitted a "specimen" that depicted a product that Defendants knew did not exist.

24 Defendants also have admitted that at that time they submitted the 1999

25 registration and subsequent filings, they were aware of Activision's ACTIVISION

26 marks but believed that they had found a way to appropriate the name for their new

27 business venture.

28

Mitchell
Silberberg &
Knupp LLP

COMPLAINT

4840291.1/40113-00054

1    69.    On information and belief, the USPTO relied on the statements of

2    Gothard and Ad Media as set forth above.

3    70.    As a result of Gothard and Ad Media's false and fraudulent statements

4    relied on by the USPTO in connection with the above, the Registration is subject to

5    cancellation at any time, and should be cancelled, pursuant to 15 U.S.C. § 1064(3).

6    71.    Pursuant to 15 U.S.C. § 1119, this Court has jurisdiction to order the

7    USPTO to cancel the Registration due to Gothard and Ad Media's fraud.

8

9    ### SIXTH CLAIM FOR RELIEF

10    ### DECLARATORY RELIEF

11    **(28 U.S.C. § 2201)**

12    72.    Activision incorporates herein by reference the averments of

13    paragraphs 1 through 71 as though fully set forth herein.

14    73.    An actual dispute has arisen and now exists between Activision, on

15    the one part, and Activision TV, Inc., on the other part. Activision contends that

16    Activision TV, Inc. is not entitled to the registration with the United States Patent

17    and Trademark Office of the trademarks that are the subject of Applications Serial

18    Nos. 77/827,404; 77/978,580; 77/912,745 and 85/143756.  Activision TV, Inc.

19    disputes Activision's contentions and contends otherwise.

20    74.    Activision requests a judicial declaration sustaining its Oppositions

21    Nos. 91195837, 91196584, 91198836 and 91201190, and denying registration of

22    Activision TV, Inc.'s Applications Serial Nos. 77/827,404; 77/978,580;

23    77/912,745 and 85/143756.

24    75.    Such a declaration is necessary and appropriate at this time to avoid a

25    multiplicity of actions, to resolve present and continuing disputes between the

26    parties, and to avoid consumer confusion with regard to the ACTIVISION Marks.

27

Mitchell
Silberberg &  28
Knupp LLP

4840291.1/40113-00054

WHEREFORE, as to all Counts of this Complaint, Plaintiff requests that this Court enter a judgment and declaration in favor of Plaintiff and against Defendants as follows:

A.    Preliminarily and permanently enjoining and restraining Defendants, all entities under their control, as well as their licensees, partners, assigns, related entities, predecessors, successors, employees, representatives, trustees, receivers, agents, and any other persons or entities acting on behalf of Defendants or with Defendants' authority, from:

(1)    using, selling, offering for sale, holding for sale, advertising or promoting any goods or services under or in connection with any trade name, trademark, service mark, Internet domain name or other designation of origin that is comprised in whole or in part of the ACTIVISION Marks, or any terms, designs or styles confusingly similar thereto; or

(2)    doing any act or thing that is likely to induce the belief that Defendants' goods or services, or activities are in some way connected with Plaintiff and/or Plaintiff's business, or that is likely to injure or damage Plaintiff or its ACTIVISION Marks; and

B.    Ordering Defendants to:

(1)    pay Plaintiff the compensatory damages sustained by Plaintiff as a result of the unlawful acts alleged herein and that such damages be trebled pursuant to 15 U.S.C. § 1117 because of the willful and unlawful acts alleged herein;

(2)    pay Plaintiff punitive damages as a consequence of the willful and wanton acts alleged herein;

(3)    account for and pay over to Plaintiff all gains, profits and advantages derived but it from the unlawful acts alleged herein and/or as a result of unjust enrichment;

Mitchell
Silberberg &
Knupp LLP

1        (4)    deliver up for destruction all materials that bear the

2   ACTIVISION Marks, including without limitation all letterhead, signage,

3   brochures, labels, stickers, trade show displays and materials, written

4   materials and other promotional materials;

5        (5)    deliver up for destruction all products that infringe on the

6   ACTIVISION Marks;

7        (6)    reimburse Plaintiff for the costs it has incurred in bringing this

8   action, together with its reasonable attorneys' fees and disbursements;

9        (7)    pay Plaintiff's costs of corrective advertising;

10     C.    Ordering the cancellation of United States Trademark Registration

11  No. 2,933,439.

12     D.    Ordering a judicial declaration sustaining its Oppositions Nos.

13  91195837, 91196584, 91198836 and 91201190, and denying registration of

14  Activision TV, Inc.'s Applications Serial Nos. 77/827,404; 77/978,580;

15  77/912,745 and 85/143756.

16     E.    Awarding Plaintiff such other and further relief as this Court may

17  deem equitable.

18

19  Dated: October 17, 2012:       MITCHELL SILBERBERG & KNUPP LLP
                                     KARIN G. PAGNANELLI

20                                MARC E. MAYER
                                     ALEXA L. LEWIS

21

22                           By:

23                                Marc E. Mayer
                                  Attorneys for Plaintiff

24                                  Activision Publishing, Inc.

25

26

27

Mitchell
Silberberg &
Knupp LLP
28

COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2    Plaintiff ACTIVISION PUBLISHING, INC. demands a trial by jury of all

3  issues triable of right by jury.

4

5  Dated:  October 17, 2012:       MITCHELL SILBERBERG & KNUPP LLP
                                   KARIN G. PAGNANELLI
6                                  MARC E. MAYER
                                   ALEXA L. LEWIS
7

8

9                                  By:
                                       Marc E. Mayer
10                                     Attorneys for Plaintiff
                                       Activision Publishing, Inc
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV12- 8964 SVW (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [x] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

**CIVIL COVER SHEET**

| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) <br> ACTIVISION PUBLISHING, INC., a Delaware Corporation | **DEFENDANTS** <br> ACTIVISION TV, INC, a Delaware Corporation; AD MEDIA DISPLAYS, INC., a Wyoming Corporation; DAVID GOTHARD, an individual |
|---|---|
| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br> KARIN G. PAGNANELLI (SBN 174763) kgp@msk.com <br> MARC E. MAYER (SBN 190969) mem@msk.com <br> ALEXA L. LEWIS (SBN 235867) all@msk.com <br> MITCHELL SILBERBERG & KNUPP LLP <br> 11377 West Olympic Boulevard <br> Los Angeles, California 90064-1683 | **Attorneys** (If Known) <br> Edward K. Welsh II <br> IP&L Solutions <br> 4558 Ashton Court <br> Naples, FL 34112 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Infringement [15 U.S.C. § 1114]; False Designation [15 U.S.C. § 1125(A)];(3) Dilution [15 U.S.C. § 1125(C)];Unfair Comp [Common Law & Cal. Bus. & Prof. Code § 17200]; Cancellation of TM Reg [15 U.S.C. §§ 1064 And 1119]; Dec Relief [28 U.S.C. § 2201]

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☒ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R.& Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **CV12-8964**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Naples, Florida |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date October 17, 2012
                                                            Marc E. Mayer

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com